[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
APPEARANCES:
 STEPHEN CARNEY, Assistant State's Attorney
 JOHN F. COCHEO, ESQ. Representing the Defendant
 ALSO PRESENT: Richard G. LaFlamme, Defendant
 Obeline M. Wood Court Monitor
 DECISION
THE COURT: So, with that, The Court is prepared to rule with regard to the defendant's motion to dismiss, slash, suppress.
I've heard the testimony of Trooper Hoyt, and Mr. LaFlamme, and I have reviewed the exhibits that have been offered.
I've also considered the arguments of counsel.
The defendant claims that the trooper did not have a reasonable and articulable suspicion that would permit him to stop the defendant's car under Terry verus Ohio, reported at 392 United States, page one, 1968. CT Page 12321-b
The Court credits the testimony of Trooper Hoyt, and finds the following facts:
As Trooper Hoyt was standing outside his cruiser on Mathewson Street in Jewett City, at approximately 5:30 p.m. on September 9th, 2000, he heard the sound of squealing tires. He looked immediately towards the intersection where the sound originated, and saw only the defendant's 1994 standard transmission pickup truck. He did not see any other vehicles in motion in the vicinity.
As the pickup truck proceeded to approach his location, Trooper Hoyt held up his hand, and inquired of the driver to see whether there was a problem.
The driver, the defendant, Mr. LaFlamme, indicated that something was wrong with his clutch.
The Court does not credit the testimony of the defendant that his vehicle did not make the squealing sound that the officer heard. But does note that even the defendant's testimony corroborates the trooper's testimony that there was, in fact, the sound of squealing tires in the vicinity at that time and place.
As evidenced by Defense Exhibits A and B, and the testimony heard in court, this incident occurred at 5:30 p.m. in a residential neighborhood, with many homes, multi-family and single family homes, where the homes are located close to the street. The street is a somewhat narrow, two lane road, and there were a number of pedestrians, including children, in the general vicinity.
Those are the facts which The Court finds.
With regard to the law, a person — and I'm quoting — a person is defined as seized under our state constitution when by means of physical force, or a show of authority, his freedom of movement is restrained. And that's a quote from State versus Donahue,251 Connecticut 636, page 642 and 643, 1999.
Brief investigatory seizures and detentions of motorists are permitted by our state and federal constitutions when the police, quote, have a reasonable and articulable suspicion that the occupants of a vehicle have engaged, are engaged, or are about to engage in criminal activity, closed quote. Quoting State versus Anderson at 24 Connecticut Appellate Reports, 438, page 441, 1990. CT Page 12321-c
Quote, Article first, Sections 7 and 9 of our state constitution permit a police officer in appropriate circumstances, and in an appropriate manner, to detain an individual for investigative purposes even though there is no probable cause to make an arrest. In determining whether the detention was justified in a given case, a court must consider if based on the whole picture the detaining officer had a particularized, and objective basis for suspecting the particular person stopped of criminal activity. A court reviewing the legality of the stop must therefore examine the specific information available to the police officer at the time of the initial intrusion, and any rational inferences to be derived therefrom. And I have quoted from State versus Donahue again,251 Connecticut at page 634, through 44.
Police have the right to stop for investigation short of arrest where a police officer believes unusual conduct, which — where a police observes unusual conduct, which leads him reasonably to conclude, in light of his experience, that criminal activity may be afoot. In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. And again, that's a quote from State versus Donahue, also citing Stateversus Watson, 165 Connecticut at 577.
Here, the trooper was able to point to specific and articulable facts that led him reasonably to conclude that traffic infractions might have occurred, or might be occurring.
Under the circumstances as set forth above, and the facts as The Court has found them, the trooper acted reasonably in making this initial, very limited intrusion.
As set forth in State versus Watson, reported at 165 Connecticut 577, at page 585, the results of the initial stop may arouse further suspicion, or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further, and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed, or are further aroused, the stop may be prolonged, and the scope enlarged as required by the circumstances.
In conclusion, the specific and articulable facts as set forth above, taken together with the rational inferences derived from those facts, reasonably warranted the limited intrusion in this case.
And the motion is denied. CT Page 12321-d
 Signed ___________________ BARBARA BAILEY JONGBLOED, JUDGE
 STATE v. LaFLAMME, No. K21N-MV000128785S (Aug. 16, 2001) STATE OF CONNECTICUT v. RICHARD G. LaFLAMME. 2001 Ct. Sup. 12321-d
No. K21N-MV000128785S Superior Court Geographical Area No. 21 Part B at Norwich. August 16, 2001
 DECISION CERTIFICATION
I hereby certify that the foregoing pages contain a true and accurate copy of the tapes transcribed in the above referred to matter, heard before the Honorable Barbara Bailey Jongbloed, Judge of the Superior Court, in Norwich, Connecticut, on August 16, 2001.
Dated in Norwich, Connecticut, on the 29th day of August, 2001.
 ___________________ Obeline M. Wood Court Monitor